ORIGINAL

FILED
JAN - 9 2007
U.S. COURT OF
FEDERAL CLAIMS

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

ARIZONA DEPARTMENT OF ECONOMIC SECURITY,

Plaintiff,

v.

THE UNITED STATES OF AMERICA,

Defendant.

No. 07- 13 C

**COMPLAINT**

The Arizona Department of Economic Security, plaintiff in the above captioned action, hereby alleges as follows:

**JURISDICTION**

1. The Arizona Department of Economic Security is seeking the recovery of commissions collected in violation of the Randolph-Sheppard Act (20 U.S.C. §§ 107-107f) by the United States Postal Service from Robert Kunau and Scott Weber, two blind vendors in Arizona, during the period 1995 through 2001.

2. The Court of Federal Claims has "jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1).

**STATEMENT OF CLAIM**

3. The United States Postal Service ("the Postal Service") is a federal agency that is subject to the terms of the Randolph-Sheppard Act ("the Act").

4. The Arizona Department of Economic Security ("the Department") is the state licensing agency in Arizona under the Act.

5. A state licensing agency may file a complaint with the United States Secretary of Education if it determines that a department, agency or instrumentality of the federal government is failing to comply with the provisions of the Act. 20 U.S.C. § 107d-1(b).

6. If a complaint is filed by a state licensing agency against a department, agency or instrumentality of the federal government, the Secretary of Education is required to convene an arbitration panel. *Id*

7. The arbitration panel shall, in accordance with the provisions of subchapter II of chapter 5 of Title 5, give notice, conduct a hearing, and render its decision which shall be final and binding on the parties. *Id*

8. The decision of the arbitration panel is subject to appeal and review as a final agency action for purposes of chapter 7 of such Title 5. 20 U.S.C. § 107d-2(a).

9. If the arbitration panel finds that the acts or practices of the department, agency, or instrumentality of the United States are in violation of the Act, or any regulation issued thereunder, the head of any such department, agency, or instrumentality shall cause such acts or practices to be terminated promptly and shall take such other action as may be necessary to carry out the decision of the panel. 20 U.S.C. § 107d-2 (b).

10. On December 20, 2002, the Department filed a complaint with the Secretary of Education alleging that the Postal Service was in violation of the Randolph-Sheppard Act because from December 1995 to July 2001 it had charged commissions to a blind vendor, Robert Kunau, who was operating a facility at the Rio Salado Post Office in Phoenix, Arizona pursuant to the Act.

11. On December 20, 2002, the Department filed a second complaint with the Secretary of Education alleging that the Postal Service was in violation of the Randolph-Sheppard Act because from October 1995 to May 2001 it had charged commissions to a blind vendor, Scott Weber, who was operating a facility at the Phoenix General Mail Facility in Phoenix, Arizona pursuant to the Act.

12. On July 28, 2003, the United States Department of Education ordered that an arbitration panel be convened to hear both of the complaints filed by the Department.

13. On April 7, 2005, a hearing on the Department's complaints was held in Phoenix, Arizona before an arbitration panel ("the Panel") made up of members selected in accordance with the Randolph-Sheppard Act.

14. At hearing, the parties stipulated that the issue to be decided was: "Whether the actions taken by the United States Postal Service have violated the Randolph-Sheppard Act in (sic) implementing regulations concerning the placement and operations of vending facilities at the Rio Salado Post Office and the Phoenix General Mail Facility. If so, what is the appropriate remedy?"

15. On June 17, 2005, the Panel issued its decision. (The Decision is attached as Exhibit One.)

16. The Panel held as a matter of law that, because the Postal Service failed to obtain the Secretary of Education's authorization of a limitation on the placement and operation of Mr. Kunau's vending facility, the collection of commissions from Mr. Kunau by the Postal Service was a violation of the Randolph-Sheppard Act.

17. The arbitration panel found that Mr. Kunau paid $116,684.02 in monthly commissions to the Postal Service in relation to his vending operation at the Rio Salado Post Office in Phoenix, Arizona during the period of December 1995 through July 2001.

18. The arbitration panel held, as a matter of law, that Mr. Kunau was damaged by the Postal Service's violation of the act in the amount of $116,684.02.

19. The arbitration panel ordered the United States Postal Service to reimburse Mr. Kunau for the total of $116,684.02 in commissions that were unlawfully withheld.

20. The arbitration panel held, as a matter of law, that because the Postal Service failed to obtain the Secretary of Education's authorization of a limitation on the placement and operation of Mr. Weber's vending facility, the collection of commissions from Mr. Weber by the Postal Service was a violation of the Randolph-Sheppard Act.

21. The arbitration panel found that Mr. Weber paid $88,444.57 in monthly commissions to the Postal Service in relation to his vending operation at the General Mail Facility in Phoenix, Arizona during the period of October 1995 through May, 2001.

22. The arbitration panel held, as a matter of law, that Mr. Weber was damaged by the Postal Service's violation of the act in the amount of $88,444.57.

23. The arbitration panel ordered the United States Postal Service to reimburse Mr. Weber for the total of $88,444.57 in commissions that were unlawfully withheld.

24. On October 28, 2005 counsel for the Department demanded that the Postal Service reimburse Mr. Kunau and Mr. Weber for the amounts that the Postal Service unlawfully obtained from them in commissions.

25. To date, the Postal Service has not reimbursed either Mr. Kunau or Mr. Weber for the amounts of the commissions that they paid.

## RELIEF REQUESTED

26. RSA requests that the court order the U.S. Postal Service to pay Robert Kunau $116,684.02 for previously paid commissions which the Postal Service was not entitled to collect under the Randolph-Sheppard Act.

27. RSA requests that the court order the U.S. Postal Service to pay Scott Weber $88,444.57 for previously paid commissions which the Postal Service was not entitled to collect under the Randolph-Sheppard Act.

28. RSA further requests that the court order the U.S. Postal Service pay the costs of bringing this action to the attorneys for RSA.

**RESPECTFULLY SUBMITTED** this 8th day of January 2007.

TERRY GODDARD
Attorney General

ROBERT C. SALMINEN
Assistant Attorney General
Office of the Arizona Attorney General
1275 West Washington, CFP/CLA
Phoenix, Arizona 85007
Tele.: (602) 542-8263
Fax: (602) 542-9279

PCDOCS 134399

# Exhibit One

**UNITED STATES DEPARTMENT OF EDUCATION**
**20 U.S.C., Sec. 107d-1(b) ARBITRATION PANEL**

Case No. R-S-03-4

Arizona Department of Economic Security,
Rehabilitation Services Division,
Claimant,
Vs.
United States Postal Service,
Respondent.

Rec'd
JUN 2 3 2005
Seh

## INTRODUCTION

On July 28, 2003, the United States Department of Education ordered the convening of an arbitration panel, pursuant to section 107d-2 of Title 20, U.S.C. (the Randolph-Sheppard Act), to hear the complaint of the Arizona Department of Economic Security, Rehabilitation Services Administration, the State Licensing Agency (hereafter SLA) against the United States Postal Service, (hereafter the Agency).

The panel which heard the case consisted of James M. Conner, Arbitrator, Panel Chairman; Richard Gargana, Agency appointee, Panel Member; and Fred (Skip) Bingham, SLA appointee, Panel Member.

Representing the SLA were Craig C. Salminen and Steven C. Goodrich of the Arizona Office of the Attorney General; representing the Agency was Neva R. Watson, Counsel, U.S. Postal Service.

A hearing was held on the matter in Phoenix, Arizona, on April 7, 2005. Each party was afforded an ample opportunity to present its evidence. Testimony was taken from five (5) individuals, one of whom served in the capacity of an expert witness. A transcription serves as the official record.

The parties stipulated that the matter is properly before the Panel. They also stipulated that the Panel has authority to issue a final and binding decision consistent with the terms of the Randolph-Sheppard Act.

Briefs were received by Panel Members on or about June 1, 2005. The Panel met in Seattle, Washington, on June 7, 2005, to review the matter and determine a final resolution. At that meeting Mr. Gargana and Mr. Bingham

concurred that the determination and drafting of the final decision would be done by the Chairman, Mr. Conner.

## STIPULATED ISSUE

The issue stipulated to by the parties is as follows:
"Whether the actions taken by the United States Postal Service have violated the Randolph-Sheppard Act in implementing regulations concerning the placement and operations of vending facilities at the Rio Salado Post Office and the Phoenix General Mail Facility.
If so, what is the appropriate remedy?"

## BRIEF HISTORICAL SUMMARY

Mr. Kunau and Mr. Weber are blind licensed vendors who operate vending facilities in federal buildings under the provisions of the Randolph-Sheppard Act. Between 1995 and 2001 both vendors paid ten per cent (10%) of their gross receipts to the Agency under the terms of the applicable licensing agreements. Both vendors dis-continued payments in 2001 based upon advice of their Attorney and have continued to operate as licensees under the Business Enterprise Program without any commissions being collected.

## POSITIONS OF THE PARTIES

### AGENCY

The position of the Postal Service may be summarized as follows:

1) The vendors volunteered to pay the ten per cent (10%) commission without any pressure or imposition being placed upon them by the Agency.
2) Congress has struck a balance between competing interests, vis a vis the vendors and the employee recreation and benefit Associations, which the Postal Service and this arbitration may not disturb.
3) The facts in this case differ from those in Minnesota vs. Riley in that the commissions were initiated and volunteered by the vendors as opposed to being imposed by the Agency.
4) The opinion of Mr. Humphreys, the expert witness, is tainted because he

is not a dis-interested party to the proceedings.

**SLA**

The position of the Arizona Department of Security may be summarized as follows:

1) The Agency required the commissions to be paid; such requirement constitutes a violation of the Act.
2) The collection of commissions on vending machine sales by federal agencies is a violation of the Act unless the requirement is approved by the Secretary of Education.
3) The Panel should order re-payment of commissions plus appropriate interest.
4) The Panel's order should be subject to any future finding by a court of competent jurisdiction that the order exceeds the Panel's authority under the Act.

## DISCUSSION

Before issuing Findings of Fact and Conclusions of Law, some general observations and conclusions regarding salient issues should be addressed.

First is the matter of the applicability of the Eighth Circuit case, Minnesota vs.Riley (citations omitted). The Panel is mindful that the Eighth Circuit has no jurisdiction in cases arising in Arizona. However, Riley does represent the highest court in the land to specifically address the matter of commissions under the Randolph-Sheppard Act. Consistent with one of the Act's stated goals to have uniform federal administration, the Chairman has concluded that the principles enumerated in Riley should be applicable to the instant case.

Next is the issue of "voluntary" versus "imposed" commissions, which is really the nexus of this dispute. To evaluate the Agency claim of "voluntary" as opposed to the SLA claim of "imposed" is similar to determining whether or not a glass of water is half full or half empty. The Chairman notes that nowhere in the Act or in the supporting regulations are the terms "voluntary

commissions" or "imposed commissions" utilized and/or defined. The standard established in Riley is abundantly clear:

"Further, neither the Randolph-Sheppard Act nor the Veterans' Canteen Service Act authorizes the VCS to collect commissions from a blind vendor or the state licensing agency. Although the Randolph-Sheppard Act authorizes the state licensing agency to set aside funds from its blind vendors' operations for a limited list of purposes, the list does not include commission payments."

The Court additionally stated:

"This conclusion must be distinguished from a conclusion that the Randolph-Sheppard Act precludes the charging of commissions in all instances. The Court expresses no opinion on whether the payment of commissions would be an acceptable limitation on a Randolph-Sheppard permit."

Consistent with the above, the Chairman finds it not necessary to resolve the "voluntary" versus "imposed" issue or to make recommendations as to how it should be handled in the event authorization of such were to be brought before the Secretary.

Next is the issue of the testimony of Mr. Humphreys. The Chairman notes that the parties stipulated as to his status as an expert witness. I also note that in a similar situation the Ninth Circuit affirmed his participation as an arbitration panel member. Additionally, his testimony was limited to historical aspects of the Act as opposed to direct facts in this case. Therefore, I have determined his testimony to be appropriate.

Another issue which needs to be addressed is the matter of the Panel's ability to issue a remedy. The Chairman is mindful that some jurisdictions have precluded Randolph-Sheppard Arbitration Panels from issuing remedies. Such preclusions in my judgement are not applicable to the instant case. This conclusion is based upon the following:

1) The Ninth Circuit in Premo vs. Martin (citations omitted) has authorized an arbitration panel to award compensatory damages in an action brought by a blind vendor against a state licensing agency.
2) The Postal Service itself in its brief suggested the broad authority inherent in an Arbitration Panel:

"Further, even if the Secretary were to make a determination that the Postal Service had placed a limitation on the placement of vending facilities that determination would be subject to review by an arbitration panel. The arbitration panel's decision in State of Oklahoma Department of Human Services v. United States Postal Service reiterates this point. There the

Arbitration Panel said,"...the Panel conclude(s) it has jurisdiction over all aspects of the complaint not withdrawn at the pre-hearing meeting. Under the Randolph-Sheppard Act, the only authority given the Secretary in settling disputes between a State Licensing Agency and a Federal property managing agency is to convene an arbitration panel. The arbitration Panel's wide-ranging authority to settle disputes is set forth in the Act, and it specifically extends to a determination by the Secretary relating to limitations on the placement of vending facilities". Arbitration Panel Decision, State of Oklahoma Department of Human Services v. United States Postal Service,
R-S 80-1, April 23,1982."
3) The parties themselves have conferred such authority to the Panel ; the second part of the stipulated issue is " If so, what is the appropriate remedy?"

An ancillary question arose with respect to remedy involving assessment. Panel member Gargana forcefully argued that any assessment required should fall on both the Agency and the SLA since they mutually agreed to the commission scheme. The Chairman has concluded that the onus to secure authorization from the Secretary to collect commissions rest with the Agency, not the SLA. In any event, such issue could at the least be incorporated into any broader tests initiated with respect to the Panel's authority to issue a remedy.

The final issue is the matter on interest. Significant arbitral authority requires egregious actions before the awarding of interest is warranted. The Agency and the SLA entered into the licensing agreement in good faith even though the aspect of collection of commissions was unlawful. Accordingly, the request for interest is denied.

Within the context stated above, I now go into specific Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

1. * The United States Post Office is a federal agency that is subject to the terms of the Randolph-Sheppard Act.
2. * The Arizona Department of Security is the Randolph-Sheppard state

licensing agency in Arizona.

3. * The United States Post Office and the Arizona Business Enterprise Program entered into a permit to operate the cafeteria at the Phoenix Post Office's General Mail Facility and adjacent vending machines.

4. * The General Mail Facility contains a number of satellite vending machine locations that, before 1995, were operated by private contractors under an agreement with the Postal Service. The contractors paid commissions to the Postal Service based upon their gross revenues.

5. * Scott Weber entered the Business Enterprise Program in 1987. In 1990, after successfully operating a number of Business Enterprise Program locations, Mr. Weber became the licensed blind vendor at the General Mail Facility.

6. * In 1995, when he learned that the private contracts regarding the satellite locations were set to expire, Mr. Weber approached Vernon Hoover, the contract manager for the Post Office, and expressed interest in operating these functions.

7. * In December of 1995, the Postal Service and the Business Enterprise Program amended the existing General Mail Facility permit to include the satellite vending facilities and to provide that the vendor would pay ten percent of the income from the satellite facilities to the Postal Workers' Employee Association.

8. * During the period of October, 1995 through May, 2001, Mr. Weber paid a total of $ 88,444.57 in monthly commissions to the United States Postal Service.

9. * In May, 2001, Mr. Weber quit paying commissions on the advice of his attorney, Robert Humphreys. The Postal Service did not object when Mr. Weber quit paying commissions. Mr. Weber continues to operate the cafeteria and the satellite locations without paying commissions.

10. * In 1995, the Business Enterprise Program manager asked Mr. Hoover if any other opportunities for the Business Enterprise Program existed in Postal Service facilities. Mr. Hoover stated that the Rio Salado Post Office vending route would be available if the vendor was willing to pay commissions.

11. * In 1995, the Program announced to the licensed blind vendors that a vending route known as the Rio Salado/University vending route was

available. The route included a temporary assignment at the Rio Salado Post Office.
12.** The announcement stated: " Please notice there is a commission of 10% to be paid to the U.S. Post Office Employee Fund for this location". The announcement further projected gross and net monthly incomes for the route.
13.** Robert Kanau has been a licensed vendor at all times relevant to the instant dispute.
14. * Mr. Kunau learned about the Rio Salado Post Office vending route through the announcement. After reading the announcement he applied for the facility. Mr. Kunau was selected to operate the facility through the Program's selection process and entered into an agreement with the Program to operate the vending route. The agreement provided for payment of a ten per cent commission.
15. * In December of 1995, the Postal Service and the Business Enterprise Program entered into a permit for a vending facility at the Rio Salado Post Office. The permit provided that the vendor would pay ten per cent of the income from the vending facility income to the Postal Workers' Employee Association.
16. ** In certain instances, when Mr. Weber was late in submitting a monthly commission check, a Postal Service employee called him and asked for the money.
17. * During the period of December, 1995 through July, 2001, Mr. Kunau paid a total of $116,684.02 in monthly commissions to the United States Postal Service.
18. * In July, 2001, Mr. Kunau quit paying commissions on the advice of his attorney, Mr. Humphreys. The Postal Service did not object. Mr.Kunau continues to operate the vending route without paying commissions.
(Note: * indicates fact stipulated by the parties;
** indicates fact determined by the Panel)

## CONCLUSIONS OF LAW

1. The Arbitration Panel has jurisdiction to hear this matter.

2. The decision of the Arbitration Panel is final and binding on the parties except as otherwise provided under the Randolph-Sheppard Act.
3. The Arbitration Panel has authority to find that the acts of the United States Postal Service are in violation of the Act.
4. The Act authorizes blind persons to operate vending facilities in federal buildings. The purpose of the Act is to provide blind persons with remunerative employment, enlarge the economic opportunities of the blind, and to stimulate the blind to greater efforts in striving to make themselves self-supporting. The goal of the Act is to expand economic opportunities available to the blind community.
5. The Act requires federal agencies to give priority to blind vendors in the operation of vending facilities on federal properties.
6. The Secretary of Education is the only official authorized to make the determination of whether the location and operation of the facility would adversely affect the interests of the United States.
7. Federal agencies and state licensing agencies enter into agreements, known as permits, authorizing the operation of vending facilities by licensed blind vendors.
8. The Act does not authorize federal agencies to collect commissions from a blind vendor or the state licensing agency without the authorization of the Secretary of Education.
9. Federal agencies are not permitted to go outside of the Department of Education's regulations and substitute a negotiated vending agreement in place of the permit system.
10. **Because the Postal Service failed to obtain the Secretary's authorization, the collection of commissions was a violation of the Randolph-Sheppard Act.**
11. Mr. Weber was damaged by the Postal Service's violation of the Act in the amount of $88,444.57.
12. Mr. Kanau was damaged by the Postal Service's violation of the Act in the amount of $116,684.02.
13. A Randolph-Sheppard Act Arbitration Panel has the authority to award damages in the context of an arbitration brought by a blind vendor against the state licensing agency.

14. Subject to any future finding by a court of competent jurisdiction that this order exceeds the panels authority under the Act, this panel orders the United States Postal Service to reimburse Mr. Kunau and Mr. Weber the amounts that they were damaged as a result of the Postal Service's violation of the Act.

# AWARD

1) The United States Postal Service is hereby ordered to reimburse Mr. Weber for the total of $88,444.57 in commissions which were unlawfully withheld.
2) The United States Postal Service is hereby ordered to reimburse Mr. Kunau for the total of $116,684.02 in commissions which were unlawfully withheld.
3) In the event this award is found to be improper by a court of competent jurisdiction, it shall serve as the Panel's recommendation for action by the Postmaster General.

Issued this 17th day of June, 2005 by

James M. Conner, Panel Chairman

___ I concur X I do not concur

Richard Gargana Date 6/16/05

X I concur ~~I do~~ not concur

Fred Bingham Date 6/17/05